NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LISA A. JOHNSON PUGH, | : | |
| Plaintiff, | : | Civ. No. 03-993 (GEB) |
| v. | : | MEMORANDUM OPINION |
| UNITED STATES POSTAL SERVICE, et al., | : | |
| Defendants. | : | |

**BROWN, District Judge**

This matter having come before the Court upon the amended complaint of Lisa A. Johnson Pugh ("Plaintiff") alleging that she fell in the customer service lobby of the Asbury Park Post Office at 801 Bangs Avenue, Asbury Park, New Jersey, as result of the alleged negligent acts or omissions of defendant United States Postal Service ("the Postal Service") and its agents. This action was brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq. (2005).[1]  This Court conducted a bench trial on May 17, 2005. The following constitutes the Court's findings of fact and conclusions of law regarding Plaintiff's complaint.

I.      BACKGROUND AND PROCEDURAL HISTORY

On March 7, 2003, Plaintiff filed her initial complaint with this Court. On March 10, 2003, the Clerk of the Court referred the case to compulsory arbitration pursuant to Local Civil

---

[1] Plaintiff has commenced this action against the United States Postal Service. However, the United States of America is the proper defendant in actions brought pursuant to the FTCA. Therefore, this action is, in effect, an action against the United States. See 28 U.S.C. § 2679 (2005).

Rule 201.1(d). On or about March 28, 2003, Plaintiff filed the instant amended complaint with this Court. On July 29, 2003, the Postal Service filed its answer to the amended complaint. On October 21, 2004, Mario C. Colitti, Esq. was appointed as arbitrator and a hearing was set for November 30, 2004. The arbitration hearing was rescheduled for December 20, 2004. The Arbitrator's Award was received and filed on January 26, 2005. On February 2, 2005, Plaintiff filed a request for trial de novo.

During a conference call on February 18, 2005, the parties requested permission to have the issues of liability and damages bifurcated. This request was granted. On March 31, 2005, this Court entered the Joint Final Pretrial Order regarding liability. The Order provided that, should Plaintiff prevail on the issue of liability, the parties would provide a separate Joint Final Pretrial Order and respective Trial Memoranda regarding damages. On April 6, 2005, following a final pretrial conference with Magistrate Judge Bongiovanni, this Court met with the parties and set a May 17, 2005 trial date. On April 29, 2005, the parties submitted their trial briefs and proposed findings of fact and conclusions of law. The parties jointly submitted four expert reports. Specifically, Plaintiff offered the reports of Robert L. Banda, P.E. ("Banda") and William Poznak, P.E. ("Poznak") and the Postal Service offered two reports authored by Julius Pereira III, A.I.A. ("Pereira"). In their trial briefs, the parties sought to exclude the reports and testimony of each others experts.[2] On May 17, 2005, the Court conducted a bench trial as to liability. The Court reserved its decision whether to exclude any of the expert testimony.

---

[2]The parties did not file their motions in limine in accordance with the Local Civil Rules. Instead, they raised the motions in their respective trial briefs. The Court will nonetheless reach the parties contentions.

II. **FINDINGS OF FACT**

1. Plaintiff brings this tort action arising under the FTCA against the Postal Service.

2. On March 30, 2001, Plaintiff fell in the customer service lobby of the Asbury Park Post Office, located at 801 Bangs Avenue, Asbury Park, New Jersey.

3. It was raining on the morning of the accident.

4. Plaintiff was wearing an overcoat and shoes.

5. In accordance with usual practice, the Post Office's outer lobby was opened to customers at approximately 6:00 a.m. and the inner lobby was opened to customers at approximately 8:30 a.m.

6. Plaintiff entered the Post Office through the main entrance and proceeded through the outer lobby. Plaintiff fell at approximately 8:49 a.m. as she entered the inner lobby through the open doorway.

7. The videotapes from the Post Office's security cameras do not support Plaintiff's assertion that she slipped as a result of a wet floor. The tapes show that Plaintiff fell forward as she entered the inner lobby. No water is visible on the floor of the inner lobby in the tapes.

8. The parties stipulate that Plaintiff does not remember falling in the Post Office or seeing any water on the floor of the Post Office.

9. Trent Pugh ("Pugh") was Plaintiff's boyfriend at the time of her fall and is now her husband. Pugh came to the Post Office after Plaintiff's fall. Pugh did not inspect the floor to determine what caused Plaintiff's fall. Pugh did not look for or notice any water on the floor of the Post Office in the area of Plaintiff's fall.

10. There was an approximately three foot wide by five foot long rug on the floor just inside

the main entrance of the lobby.

11. There was a wet floor sign in the outer lobby, just inside the main entrance.

12. There was no wet floor sign present in the inner lobby at the time of Plaintiff's fall.

13. There was no rug or walk off mat at the entrance to the inner lobby at the time of Plaintiff's fall.

14. There were area rugs on the floor of the inner lobby in front of each of the three customer service windows.

15. The floor of the outer and inner lobby is made of terrazzo. Terrazzo is a mixture of granite, quartz and marble. It is smooth, hard, durable and non-porous.

16. The Post Office's floors are stripped and polished approximately one or two times a year using a product called Boardwalk High Solids Floor Finish. The label indicates that the polish meets the American Society for Testing and Materials (ASTM) Standard for slip resistance.

16. The Post Office's janitors regularly checked the floors for items or liquid. This practice was observed on the day of Plaintiff's fall.

17. One of the janitors, William Potts ("Potts"), inspected the lobby after Plaintiff's fall. Potts saw about 10 to 15 small drops of water spread out in an area of approximately 10 feet from the inner lobby door. There was not enough water to require a mop.

**III. CONCLUSIONS OF LAW**

  A. <u>Standard for Admissibility of Expert Testimony</u>

As a threshold matter, this Court must determine whether to admit the expert testimony offered by Plaintiff (Banda, Poznak) and the Postal Service (Pereira). The admissibility of expert

4

testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of opinion or otherwise.

Fed. R. Civ. P. 702 (2005).

In Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 597 (1993), the United States Supreme Court held that the Court must exercise a gatekeeping function when determining the admissibility of proposed expert testimony under Rule 702.  The standards of admissibility under Rule 702 and the Court's gatekeeping function are applicable not only to scientific expert testimony, but also to any expert testimony that is based on "'technical' and 'other specialized' knowledge." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999).  The proffered expert testimony is admissible only if it is based on a reliable foundation and is "relevant to the task at hand." Daubert, 509 U.S. at 597.

As framed by the Third Circuit, the expert must be qualified as an expert based on a broad range of specialized knowledge, skill or training. See In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994), cert. denied, 513 U.S. 1190 (1995).  While the level of expertise may affect the reliability of a particular expert, the Third Circuit generally has taken a policy of liberal admissibility with respect to an expert's qualifications. See id.  "The second requirement of Rule 702 is that the expert must testify to 'scientific, technical or other specialized knowledge [that] will assist the trier of fact.'" Id. at 742 (quoting Fed. R. Evid. 702); see also Kumho Tire, 526 U.S. at 141.  The testimony is admissible so long as the "process or technique the expert used in formulating the opinion is reliable." Id. at 742.  The test of reliability is a flexible one, and "the

law grants the district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." Kumho Tire, 526 U.S. at 142 (citing General Electric Co. v. Joiner, 522 U.S. 136, 143 (1997) (emphasis in original).  Finally, the proffered testimony must assist the trier of fact in resolving a disputed relevant factual issue in the case.  See In re Paoli, 35 F.3d at 742-43.  In other words, the proffered testimony must "fit" a particular issue of the case.  See id. at 743.

As with all evidence, even if the proffered testimony is admissible under Rule 702, it must nevertheless be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or its propensity to mislead the jury.  See Daubert, 509 U.S. at 595; In re Paoli, 35 F.3d at 746.

The proponent of the expert testimony has the burden of proving its admissibility by a preponderance of the evidence.  See United States v. Van Wyk, 83 F. Supp.2d 515, 519 (D.N.J. 2000); Diaz v. Johnson Matthey, Inc., 893 F. Supp. 358, 372 (D.N.J. 1995).

    B.    The Court Finds That The Proffered Expert Testimony Is Sufficiently Reliable Under Federal Rule Of Evidence 702

Here, the Court finds that Banda, Poznak and Pereira (collectively, "the Experts") possess the requisite expertise and their testimony is sufficiently reliable to assist the Court in its determination of this case.  The parties do not contest the Experts' qualifications in their respective briefs.  Consistent with the Third Circuit's policy of liberal admissibility with respect to an expert's qualifications, the Court is satisfied that the Experts possess sufficient expertise.  The Court will address the parties' contentions with respect to each expert below.

       1.     <u>Pereira</u>

Plaintiff contends that Pereira's testimony should be excluded because his methodology is unreliable. Pereira opined that the Post Office's floor was not unreasonably dangerous based on tests he conducted in the area of Plaintiff's fall using a Variable Incidence Tribometer (VIT) with a Standard Neolite test shoe. <u>See</u> Pereira Report at 2. In reference to ASTM standards, Pereira opined that a slip resistance of 0.50 is widely recognized as safe for walkways. Using the VIT, Pereira measured the slip resistance of the floor as 0.84 when dry and 0.60 when wet with distilled water. Therefore, Pereira concluded that the Post Office's floors complied with reasonable standards for safe floors. Pereira further opined that, "since the floor is not dangerously slippery when wet, warnings about slippery conditions related to water would only provide superfluous information to users . . ." <u>Id.</u> at 3.

Specifically, Plaintiff argues (1) that Pereira employs the wrong ASTM Standard because ASTM D 2047 relates to measurement using a "James Machine" and is inappropriate for use on wet surfaces, and (2) that Pereira's testing method is unreliable and not generally accepted because there is no known or potential rate of error or precision bias for the VIT. However, as explained above, the determination of reliability is flexible and lies within the sound discretion of this Court. The Court finds that Pereira's testimony was credible and reliable. Pereira explained on direct examination that the VIT is a generally accepted means for measuring slip resistance, rather than coefficient of friction, which is measured by a James Machine. Pereira continued that a James Machine is less useful in a case such as this because it is extremely large and cannot be transported for on-site testing. In other words, the only way to test the Post Office floor using a James Machine would be to remove a sample of the floor. Moreover, Pereira emphasized that the

7

VIT, unlike the James Machine, is approved for wet testing. Therefore, the Court concludes that Pereira's testimony should be admitted because it is credible and reliable and will aid the Court in its resolution of this case.

        2.      <u>Banda and Poznak</u>

The Postal Service contends that the testimony of Banda and Poznak should be excluded because it fails to satisfy the third requirement of Rule 702 – that the expert testimony fit with the facts of the case. <u>See</u> Defendant's Br. at 17. More specifically, the Postal Service argues that Banda and Poznak's conclusions that water existed on the floor must be excluded because it does not comport with the facts of the case, i.e. the photographic and video evidence and testimony. This argument cannot succeed. The relevant question is whether the proffered testimony assists the trier of fact in resolving a disputed relevant factual issue. In this case, the parties dispute whether the floor was wet and whether, even assuming the floor was wet, it caused Plaintiff's fall. Banda and Poznak's testimony is relevant to these disputed issues of fact. Accordingly, the Court concludes that the testimony of Banda and Poznak will be useful in resolving these contested matters and should be admitted because it fits with the facts of the case.

The Postal Service also criticizes Banda and Poznak's testimony because they both did not conduct tests on the Post Office's floor. In preparing his report, Banda inspected the Post Office's floors and reviewed the tapes. In his report, Banda states: "No coefficient of friction tests were conducted on the incident floor by this writer due to the passage of nearly three years between the time of the incident and the writer's inspection." In preparing his report, Poznak reviewed three color photographs of the Post Office floor, climatological data for March 2001 and the reports of Banda and Pereira. Poznak also inspected both the inner and outer lobby of the Post Offfice.

Despite the absence of testing, the Court concludes that Plaintiff has sufficiently established the reliability of Banda and Poznak's testimony by a preponderance of the evidence. The Court may consider any deficiencies in their methodology when assessing credibility and determining the weight that their testimony should be accorded.

> C. This Court Will Consider Evidence Regarding The Postal Service's Subsequent Placement Of A Wet Floor Sign In The Lobby As Circumstantial Evidence That The Floor Was Wet

Plaintiff seeks to introduce evidence and testimony establishing that the Postal Service placed a wet floor sign in the inner lobby following Plaintiff's fall.[3] The Postal Service contends that this evidence should be excluded under Federal Rule of Evidence 407. Rule 407 states:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a products design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Fed. R. Civ. P. 407 (2005). Plaintiff asserts that evidence concerning the wet floor sign is not being offered to establish negligence but rather as evidence that the floor was in fact wet in the area where Ms. Johnson fell. The Court agrees that the evidence should be admitted for this limited purpose. Therefore, the Court will consider evidence that a wet floor sign was placed in the inner lobby following the accident as circumstantial evidence that the floor was wet.

---

[3]The Postal Service also seeks to exclude any evidence regarding the placement of a rug in the inner lobby following the accident. In her trial brief, Plaintiff does not argue that this evidence is admissible under Rule 407. Because Plaintiff seeks to introduce this evidence to establish negligence, the Court concludes that it must be excluded under Rule 407.

D.  The Court Finds That The Postal Service Is Not Liable For Plaintiff's Alleged Injuries

Plaintiff's negligence claims against the Postal Service cannot succeed.  A claimant may recover under the FTCA only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).  In the present case, it is undisputed that the substantive law of New Jersey applies because Plaintiff's fall took place in New Jersey.  In New Jersey, a commercial property owner has a non-delegable duty to use reasonable care to protect invitees against known or reasonably discoverable dangers.  Moore v. Shearing Plow, Inc., 328 N.J. Super. 300, 305 (N.J. Super. Ct. App. Div. 2000).  Ordinarily, an injured plaintiff asserting that a defendant breached his or her duty of care must demonstrate that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident, unless the circumstances were such that the dangerous condition was likely to occur.  Bozza v. Vornado, 42 N.J. 354, 360 (N.J. 1964).  Negligence will never be presumed and the burden of proving negligence is on the plaintiff.  Buckelew v. Grossbard, 87 N.J. 512, 525 (N.J. 1981).

1.  Plaintiff Has Not Demonstrated By A Preponderance Of The Evidence That The Post Office's Floor Was Unreasonably Dangerous

Plaintiff first argues that the intrinsic condition of the Post Office's terrazzo floor renders it likely to become slippery.  However, "[a] terrazzo floor is not in and of itself an unreasonably dangerous condition." Hess v. United States, 666 F. Supp. 666, 673 (D. Del. 1987).  Plaintiff argues this case is "remarkably similar" to Brodie v. Albert Lipson & Sons, 17 N.J. 383 (1955).  In Brodie, the New Jersey Supreme Court affirmed a jury verdict, holding that "there was evidence from which a jury could reasonably infer that the construction of the [terrazzo] floor

rendered it peculiarly liable to become slippery by virtue of introduction of water thereon and that the defendant omitted precautions which would have been practical or reasonable under the circumstances . . ." Id. at 390. Therefore, the court held that the trial court's failure to instruct the jury that it could not find negligence unless it found that the defendant had actual or constructive knowledge of the alleged dangerous condition was not erroneous. Id. at 392.

However, Brodie is readily distinguishable on its facts. In Brodie, the floor was in an outdoor vestibule extremely susceptible to rain. In fact, the plaintiff testified that the floor was "all wet." In addition, the plaintiff introduced expert testimony regarding the dangerous slope or "pitch" of the floor. In the present case, Plaintiff has introduced scant evidence that the floor was wet. Neither Plaintiff nor Pugh, her then boyfriend, recall seeing water on the floor. Potts, the janitor, testified that there were approximately ten to fifteen drops of water spread out in an area of about ten feet. Further, the Post Office's terrazzo floor is indoors and not sloped. Moreover, unlike in Brodie, there were rugs in place and the floor was regularly treated with a slip resistant polish. Therefore, this Court cannot conclude that the Post Office's terrazzo floor was inherently dangerous and Plaintiff is not relieved of the burden of demonstrating that the Postal Service had actual or constructive notice of the alleged dangerous condition.

    2.  Plaintiff Has Not Demonstrated By A Preponderance Of The Evidence That The Postal Service Was Negligent

Even if one assumes that the floor was dangerously wet (which was not proven), Plaintiff has not demonstrated by a preponderance of the evidence that the Postal Service acted negligently. First, for the reasons explained above, Plaintiff must demonstrate that the Postal Service had notice of the alleged dangerous condition. Plaintiff has offered no evidence that the Postal

11

Service knew or should have known the floor was dangerously wet. See Sims v. Newark, 244 N.J. Super 32, 42 (N.J. Super. Ct. Law Div. 1990) ("Existence of an allegedly dangerous condition is not notice of it."). As discussed above, Plaintiff has offered scant evidence that the floor was actually wet. Also, there is no evidence that any other person fell, slipped or complained about slippery conditions on the morning of the fall. See Pippin v. Ranch House South Inc., 366 A.2d 1180, 1183 (D. Del. 1976) ("Evidence of the lack of prior accidents resulting from an alleged unreasonable dangerous condition may be used to show that the condition is not unreasonably dangerous."). Therefore, the Court finds that the Postal Service did not have notice of the alleged dangerous condition.

 Further, the Court finds that the Postal Service exercised reasonable care to keep the floor safe. Among the Postal Service's routine precautions, the floor was routinely polished once or twice per year to reduce slipperiness and a rug was maintained at the entrance to the outer lobby. This rug and a wet floor sign were present in the outer lobby on the day of Plaintiff's accident. Further, the janitors were required to regularly inspect the floors. The evidence and testimony bears out that this procedure was followed on the morning of Plaintiff's fall. Therefore, the Court concludes that the Postal Service took reasonable precautions to ensure customer safety.

 Moreover, the evidence and testimony presented demonstrates not only that the Postal Service's safety precautions were reasonable, but also that they were effective on the morning of Plaintiff's accident. The Court again notes that no other customers fell, slipped or complained about slippery conditions that morning. In addition, there is absolutely no evidence that there was any puddling in the inner lobby. Potts testified that there was only ten to fifteen drops of water spread out in an area of approximately ten feet. The Postal Service was not required to exercise

extraordinary care – only reasonable care.  The Postal Service cannot be expected to prevent customers from tracking small amounts of rain into the Post Office.  Therefore, the Court concludes that the Postal Service was not negligent.

>   3.   <u>Plaintiff Has Not Demonstrated By A Preponderance Of The Evidence That Her Fall Was Caused By A Slip On The Wet Floor</u>

Finally, even assuming that the Post Office floor was wet, the Court is not convinced that Plaintiff's fall was the result of slipping on a wet floor.  "In negligence cases under New Jersey law, a plaintiff must establish that defendant breached a duty of care, which constituted a proximate cause of plaintiff's injuries."  <u>Keith v. Truck Stops Corp.</u>, 909 F.2d 743, 745 (3d Cir. 1990).  Upon review of the videotapes, the Court notes that Plaintiff fell forward as she entered the inner lobby.  Plaintiff does not appear to slip on a wet floor.  Rather, it seems Plaintiff may have tripped or collapsed.  Further, Plaintiff does not recall the circumstances of her fall.  Plaintiff has not demonstrated by a preponderance of the evidence that her fall was proximately caused by a slip on the wet floor.  Therefore, Plaintiff's negligence claims cannot succeed.

**III.    CONCLUSION**

For the foregoing reasons, the Court finds that the Postal Service is not liable for Plaintiff's fall in the Asbury Park Post Office on March 30, 2001, and her resulting injuries. Accordingly, the Court need not entertain the issue of damages.  An appropriate form of Order is filed herewith.

                                                s/ Garrett E. Brown, Jr.
                                           GARRETT E. BROWN, JR., U.S.D.J.